DALE F. MILLER and ESTATE OF LOIS A. MILLER, DECEASED, DALE F. MILLER, EXECUTOR, ET AL. [1], Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent YORK A. HINMAN and HELEN W. HINMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket Nos. 1703-74, 1705-74.
United States Tax Court
T.C. Memo 1977-39; 1977 Tax Ct. Memo LEXIS 402; 36 T.C.M. (CCH) 169; T.C.M. (RIA) 770039; February 17, 1977, Filed James M. McQuillan and James A. Lane, for the petitioners. Ronald Frykberg, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax for the year 1968. Dkt. No.
Petitioners
Deficiency
1703-74
Dale F. Miller and
$129,668.41
Estate of Lois A.
Miller, Dale F.
Miller, Executor
1705-74
York A. Hinman and
69,801.25
Helen W. Hinman
These cases were consolidated for purposes of trial, briefing, and opinion. Concessions having been made, we are to decide whether petitioners purchased certain shares of Camino, Inc. stock from their respective wholly owned corporations for less than fair market value on July 1, 1968. FINDINGS OF FACT Some facts were *403 stipulated and are so found. Petitioner Dale F. Miller and the decedent Lois A. Miller were husband and wife, who, at the time of filing the petition herein, resided in North Platte, Nebraska. Their joint Federal income tax return for 1968 was filed with the Internal Revenue Service Center at Kansas City, Missouri. Petitioners York A. Hinman and Helen W. Hinman are husband and wife, who, at the time of filing the petition herein, resided in North Platte, Nebraska. Their joint Federal income tax return for 1968 was filed with the Internal Revenue Service Center at Kansas City, Missouri. Camino, Inc., is a Nebraska corporation which was incorporated under the laws of the State of Nebraska on February 15, 1963.Camino, Inc., is the owner and operator of a motel business in North Platte, Nebraska, under the name of Holiday Inn of North Platte. The motel is operated under a license agreement with Holiday Inns of America, Inc., and was constructed by Camino, Inc., on a parcel of land located adjacent to the South Platte River. The land was leased from two individuals on January 31, 1964, for a term of 20 years. The leasee (Camino) was given two successive options to renew *404 the lease on similar terms, each renewal period to be for 10 years. Upon the termination of the lease, all fixed improvements attached to the property except trade fixtures would become the property of the lessor. On July 1, 1968, the monthly rental being paid was $1,000. In addition, Camino paid all real estate taxes on the leased premises. Camino, Inc., opened its motel business on May 1, 1965. While the motel consisted of 100 units at that time, 50 additional units were added in 1966 and another 50 units were added in 1967. As of July 1, 1968, the business consisted of 200 motel rooms, a bar, dining room, kitchen, lobby, and outside swimming pool.Twenty-four additional units were added in 1969. Camino employed a staff, which numbered between 60 and 75 employees including a full-time innkeeper to manage the day-to-day operation of the business as the motel was open 24 hours per day.In addition, petitioners (except for the decedent) as members of the board of directors and officers of the corporation during 1968 actively participated in its general management to varying degrees. Camino, Inc.'s balance sheets as of December 31, for the years 1965 through 1968, as well *405 as its book value per share are set forth below (as per audited statements). 1965
1966
1967
1968
ASSETS
Current Assets
Cash
$ 4,937.16
$ 10,110.98
$ 46,040.00
$ 188,734.70
Accounts Receivable
5,418.05
10,168.43
13,476.63
19,391.08
Inventories
11,537.85
10,457.89
11,352.92
16,856.53
Prepaid Expense
2,240.87
2,109.00
2,748.00
2,828.00
TOTALS
$ 24,133.93
$ 32,846.30
$ 73,617.55
$ 227,810.31
Fixed Assets
Buildings, leasehold, im-
provements & equipment
$1,249,715.31
$1,390,322.31
$1,741,844.33
$1,878,010.64
Less: Accumulated
depreciation
62,216.99
137,444.21
209,094.03
289,698.21
NET BOOK VALUE
$1,187,498.32
$1,252,878.10
$1,532,750.30
$1,588,312.43
Unamortized cost of linens
and dishes
24,619.43
27,100.14
29,109.18
27,516.69
TOTALS
$1,212,117.75
$1,279,978.24
$1,561,859.48
$1,615,829.12
Other Assets
67,900.00
NONE
NONE
NONE
TOTAL ASSETS
$1,304,151.68
$1,312,824.54
$1,635,477.03
$1,843,639.43
LIABILITIES
Current Liabilities
Long-term debt due with-
in one year
$ 77,937.51
$ 111,355.75
$ 136,915.84
$ 167,969.58
Notes payable to banks
25,000.00
Accounts payable and
accrued expense
27,252.65
44,869.00
89,709.18
116,769.47
TOTALS
$ 130,190.16
$ 156,224.75
$ 226,625.02
$ 284,739.05
Long-term Liabilities
Long-term debt due after
one year
$ 725,467.71
$ 814,978.11
$ 982,350.10
$1,042,377.61
Other Liabilities
$ 191,100.00
NONE
NONE
NONE
STOCKHOLDERS' EQUITY
Capital Stock
$ 347,000.00
$ 425,000.00
$ 425,000.00
$ 425,000.00
Retained Earnings
( 89,706.19)
( 83,378.32)
1,501.91
91,522.77
TOTALS
$ 257,293.81
$ 341,621.68
$ 426,501.91
$ 516,522.77
TOTAL LIABILITIES AND
STOCKHOLDERS' EQUITY
$1,304,151.68
$1,312,824.54
$1,635,477.03
$1,843,639.43
Book Value Per Share
$74.15
$80.38
$100.35
$121.53
(3,470 shares outstanding
in 1965; 4,250 shares out-
standing 1966, 1967 and
1968)
*406 Camino Inc.'s income statements as of December 31, for the years 1965 through 1968 are set forth below: 1965
1966
1967
1968
Revenue: Room Rentals
$204,349.15
$382,713.13
$546,359.14
$671,885.54
Food and beverge sales
212,554.40
364,139.32
441,917.82
508,306.72
Other motel sundry
15,863.22
30,886.00
32,942.50
34,366.70
TOTALS
$432,766.77
$777,738.45
$1,021,219.46
$1,214,558.96
Cost and Expenses: Department operating
expense
$369,586.86
$573,813.66
$ 689,121.93
$ 802,287.21
General and Administrative
29,728.95
59,117.41
106,027.71
147,172.26
Depreciation
62,216.99
75,227.22
71,649.82
85,065.87
Interest
45,311.78
63,252.29
69,539.77
70,400.00
TOTALS
$506,844.58
$771,410.58
$ 936,339.23
$1,104,925.34
NET INCOME (loss)
before income tax
($ 74,077.81)
$ 6,327.87
$ 84,880.23
$ 109,633.62
Provision for income tax: Federal
$ 557.41
$ 49,876.64
State
2,160.10
TOTALS
NONE
NONE
$ 557.41
$ 52,036.74
Less: Investment credit
557.41
32,423.98
TOTALS
NONE
NONE
NONE
$ 19,612.76
NET INCOME
($ 74,077.81)
$ 6,327.87
$ 84,880.23
$ 90,020.86
Per Share
[21.35)
$1.49
$19.97
$21.18
(3,470 shares outstanding
in 1965; 4,250 shares out-
standing in 1966, 1967, and 1968)
*407 Camino, Inc., is and at all times since its inception has been a closely held corporation with its capital stock limited to one class of common stock. The stock has a par value of $100 per share and has never been listed on any stock exchange, is not available on any over-the-counter market, and has never been publicly traded. Since its inception, Camino has never paid a dividend to its shareholders. On July 1, 1968, the outstanding common stock of Camino, Inc., was held as follows: Shareholders
Number of Shares
Percentage
Hinman's, Inc.
1,000
23.5
Ogallala Realty, Inc.
500
11.8
Goodall, Inc.
500
11.8
Paul K. Ely
250
5.9
B. F. and W. I. Wilson
1,000
23.5
Alice J. French
1,000
23.5
Total
4,250
100
Hinman's, Inc., is a Nebraska corporation with one class of stock, common stock. On July 1, 1968, all of the common stock of Hinman's, Inc., was owned by petitioners York A. Hinman and Helen W. Hinman. On that date, York A. Hinman purchased 1,000 shares of Camino, Inc. stock from Hinman's, Inc., for $100,000. Immediately preceeding this purchase, Hinman's, Inc., had retained earnings of $82,500.43 and York A. Hinman's basis in his Hinman *408 Inc. stock was $28,000. Ogallala Realty, Inc. (Ogallala) is a Nebraska corporation with one class of stock, common stock. On July 1, 1968, all of the common stock of Ogallala was owned by the decedent, Lois A. Miller. On that date, the decedent purchased 500 shares of Camino, Inc. stock from Ogallala for $50,000. Immediately preceeding such purchase, Ogallala had retained earnings of $102,312.70 and the decedent's basis in her Ogallala stock was $5,857.06. Goodall, Inc. (Goodall) is a Nebraska corporation with one class of stock, common stock. On July 1, 1968, all of the common stock of Godall was owned by petitioner, Dale F. Miller. On that date, Dale F. Miller purchased 500 shares of Camino, Inc. stock from Goodall for $50,000. Immediately preceeding such purchase, Goodall had retained earnings of $118,537.17 and Dale F. Miller's basis in his Goodall stock was $8,266.48. In his notice of deficiency, respondent determined that the fair market value of the Camino stock purchased by petitioners from their respective corporations on July 1, 1968, was $350 per share. [2] Consequently, respondent further determined that the petitioners received a distribution from their respective *409 corporations to which section 301 [3] applies, equal to the difference between the fair market value of the Camino stock and the $100 per share they paid for it. OPINION There is no dispute that petitioners will be in receipt of a distribution from their respective corporations in 1968 to which section 301 applies if, and to the extent that, we determine the value of the Camino, Inc. stock transferred to petitioners on July 1st of that year exceeds $100 per share. Petitioners maintain that the fair market value of the Camino stock purchased by them on July 1, 1968, from certain corporations in which they individually owned a 100 percent equity interest was not in excess of the price paid ( $100 per share). Respondent, on the other hand, maintains that such stock had a value on that date of not less than $225 per share. Petitioners and respondent each offered the testimony of an expert witness who was qualified to express an opinion as to the value of the *410 stock. In addition, petitioners offered the testimony of a second expert witness who was qualified to express an opinion only as to the value of the motel facility. Petitioners' expert (stock value) expressed an opinion that the stock was worth $82.73 per share on July 1, 1968. His primary approach was to determine the adjusted earnings per share of the corporation and then to capitalize these earnings using a 15 percent rate of return.His opinion was premised on the belief that a willing buyer would require such a high rate of return on his investment in the stock, due to the lack of marketability of the shares, as well as the fact that only a minority interest in the corporation would be acquired. Petitioners' other expert (motel value) expressed an opinion that the fair market value of the motel facility on July 1, 1968, was $1,600,000.[4] His approach included a capitalization of earnings based on a "gross room multiplier", as well as replacement cost less depreciation, and comparable sales. Respondent's expert, on the other *411 hand, was of the opinion that as of July 1, 1968, the minority shares involved had a fair market value of $225 per share. In arriving at this figure, respondent's expert considered many factors including the history of the business, the economic and business outlook in general, the marketability of the stock, and the book value of the stock. The primary factor utilized by respondent's expert, however, involved the use of five publicly-owned companies as comparatives. [5] By using a derivative of the price earnings ratio of these companies for the relevant period, he arrived at a capitalization of Camino's earnings which he believed appropriate. He then discounted the resultant figure to allow for lack of dividends and marketability of the minority interest involved. *412 The determination of the fair market value of stock in a closely held corporation absent previous sales of the stock at arm's-length is an arduous task. [6] It is an uncertain art at best, and results in a Solomon-like pronouncement which is necessarily based upon an approximation derived from the evaluation of elements not readily measured. See . [7]
We have carefully examined and analyzed all the evidence contained in the record pertaining to the valuation of the stock in question. We have considered the opinion of the expert witnesses in accordance with the qualifications of each and our comments above. Based on our evaluation of the evidence, we conclude that the fair market value *413 of the stock transferred to petitioners on July 1, 1968, was $125 per share. Decisions will be entered under Rule 155. Footnotes
1. Lois A. Miller died on January 19, 1976, some two months following the trial of this case. Pursuant to a motion filed by counsel for petitioners on May 3, 1976, the Estate of Lois A. Miller was substituted as a petitioner in this case.↩
2. Respondent is now asserting the fair market value of the stock on July 1, 1968, to be $225 per share. ↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
4. Petitioners' expert determined the net value of the motel to be $400,000 after subtracting existing liabilities from the $1,600,000 figure.↩
5. The five companies used as comparatives were: Hilton Hotels Corp., Holiday Inns, Inc., Ramada Inns, Inc., Sonesta International Hotels Corp. and Howard Johnson Co. The common stock of each of these corporations is traded on the New York Stock Exchange on a daily basis. At trial, respondent's expert acknowledged that while these companies and Camino, Inc. share similar risks, they are not comparable. We share this view.↩
6. In 1970, Camino redeemed the shares held by Alice J. French. In view of the circumstances surrounding the redemption, however, we did not find the transaction helpful in arriving at our conclusion. ↩
7. The experts (stock value) generally agreed that a minority interest discount of approximately 20 percent was appropriate. In view of the circumstances present in this case, however, we find such amount to be rather conservative.↩